**IN THE UNITED STATES**
**DISTRICT COURT OF COLORADO**

Civil Action No. 1:26-cv-2611

LEAH DARR

Plaintiff,

v.

POUDRE SCHOOL DISTRICT

Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Leah Darr ("Ms. Darr") brings this cause of action for unlawful discrimination and FMLA retaliation against Poudre Valley School District ("PSD"), and alleges and states as follows:

**JURISDICTION**

1. This action arises under the Constitution and laws of the United States of America, including Article III, Section 1 of the United States Constitution.

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Family and Medical Leave Act at 29 U.S.C. § 2617.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3), because Ms. Darr resided and worked in the District of Colorado of the United States of America at the time of the conduct alleged to be unlawful were committed.

## PARTIES, JURISDICTION, AND VENUE

4. Leah Darr worked for Poudre Valley School District at all times relevant to this Complaint.

5. At all times relevant to this Complaint, Ms. Darr was an "employee" subject to the protections of Title VII and FMLA. *See* 42 U.S.C. § 2000e (f); 42 U.S.C. § 825.110.

6. PSD, is a school district incorporated under the laws of Colorado. At all times relevant, Poudre Valley School District was an "employer" subject to the requirements and prohibitions Title VII and FMLA. *See* 42 U.S.C. §§ 2000e (b); 42 U.S.C. §§ 825.104.

## ADMINISTRATIVE EXHAUSTION

7. On January 9, 2025, Ms. Darr filed EEOC Charge 541-2025-01342 for unlawful gender and sexual orientation discrimination and retaliation against PSD.

8. On May 8, 2026, the EEOC issued Ms. Darr a Notice of Right to Sue Letter regarding her claims against PSD.

9. Thus, all administrative exhaustion requirements have been met prior to filing this action.

## STATEMENT OF FACTS

10. Ms. Darr was employed by PSD as an Apprentice Plumber from about April of 2022, until October of 2024.

11. Ms. Darr is an openly gay female and was the first gay woman hired by PSD's Facilities department.

12. Ms. Darr reported to John Gossman, who was the master plumber for PSD and oversaw all plumbers during all relevant times.

13. Mr. Gossman had a discriminatory animus against Ms. Darr because she was a gay woman and began harassing and discriminating against her soon after her hire.

14. Soon after she began working for PSD, Ms. Darr needed to take unpaid time off to care for her ill mother.

15. In January of 2024, Ms. Darr took two weeks of sick leave after she began suffering from strep throat/conjunctivitis.

16. Upon returning from the sick leave, she noticed Mr. Gossman treating her differently. Specifically, Mr. Gossman would not respond to her greetings and would micromanage and argue with her on menial tasks.

17. Ms. Darr began hearing from other employees that Mr. Gossman was upset she took time off from work and was complaining about her to others.

18. Under information and belief, Mr. Gossman did not complain about heterosexual males who worked for him for taking time off.

19. Mr. Grossman's animosity was so severe that Ms. Darr later learned Mr. Gossman was telling other employees statements such as "Leah is a piece of shit, she is taking time off without pay, we can't do that" and after learning there was no policy against taking time off for legitimate reasons he also said "Leah is a piece of shit, she is lying about where she has been, not planning her work out well and milking the clock."

20. Mr. Gossman supervised Ms. Darr differently than heterosexual male employees as well. For example, Mr. Grossman would consistently not trust her judgment and question her work despite her being qualified for her job. If Ms. Darr called him from a job and explained what repair or part was needed, Mr. Gossman would argue with her and travel to the location to look for himself. Even after Ms. Darr was right time and time again, Mr. Gossman would continue to make her wait on the job for even the most basic judgement calls.

21. Ms. Darr did not witness Mr. Gossman micromanage or argue with any heterosexual, male co-workers.

22. After Ms. Darr returned from her medical leave, she also began to see the number of tickets assigned to her go down. Ms. Darr was a high-capacity employee that received excellent feedback from PSD stakeholders, both for her ability to timely complete tasks as well as her friendly and professional demeanor.

23. Ms. Darr was concerned that Mr. Gossman was reducing the number of tickets assigned to her so he could claim she was underperforming. True to her concern, Ms. Darr was soon put under administrative investigation.

24. As part of that administrative investigation, PSD looked at Ms. Darr's GPS records, work badge swipes, and work vehicles. Under information and belief, PSD did not regularly look at the GPS records, work bad swipes, and work vehicles of heterosexual male Facilities employees.

25. Under information and belief, PSD also put a GPS tracker on Ms. Darr's vehicle and did not do this for other vehicles in the Fleet Department at that time.

26. The administrative investigation alleged that Ms. Darr used her PSD vehicle for personal errands and commute to home, and that arrived late to work on several occasions.

27. Ms. Darr provided legitimate reasons for where the PSD vehicle was at all times, and took responsibility for being late.

28. As a result of the administrative investigation, Ms. Darr was provided a final written warning and told that any further infractions would result in her termination.

29. When Ms. Darr returned to work, Mr. Gossman continued to discriminate against her in her day-to-day duties.

30. At or around this time, Trudy Trimbath took over as Assistant Director of Facilities.

31. On or around May 1, 2024, Ms. Trimbath held a meeting with Mr. Gossman and Ms. Darr to discuss her performance moving forward.

32. During this meeting, Ms. Darr confided to Ms. Trimbath her concerns about being treated differently because of her gender. She told Ms. Trimbath "being a woman in a male dominated field I have to work twice or three times as hard and still get looked at as a lesser than." Ms. Trimbath put her hand up and said "I'm going to stop you right there" and did not let Ms. Darr share any more concerns about unlawful discrimination.

33. After Ms. Trimbath directed her to stop talking about unlawful discrimination, Ms. Darr asked if PSD's human resources could join the meeting.

34. Ms. Trimbath said she did not want to involve HR, but would stop the meeting if Ms. Darr insisted.

35. Ms. Darr was afraid of retaliation so she acquiesced to Ms. Trimbath's request to not involve HR into the complaint of unlawful discrimination.

36. Mr. Gossman later told Ms. Darr that he needed to "watch his back" because she complained about his unlawful discrimination.

37. Around this time, Ms. Darr became eligible for Family Medical Leave Act leave to care for her medical conditions.

38. Ms. Darr suffers chronic medical conditions, including shoulder, neck and back pain that she treats with physical therapy and dry needling.

39. Rebecca Morrison in HR advised Ms. Darr of her FMLA rights to take time off from work to seek medical care for her conditions.

40. Ms. Darr expressed to Ms. Morrison her fear of further retaliation from Mr. Gossman and Ms. Trimbath for using FMLA, given Mr. Gossman's previous comments about her taking leave.

41. Ms. Darr later turned in her FMLA paperwork to Courtney Brickard in HR and stressed her concerns of retaliation. Ms. Brickard responded it was her right as an employee to take FMLA, but stated she would be "grabbing the popcorn" because the animosity Mr. Gossman and Ms. Trimbath had shown Ms. Darr.

42. During June of 2024, Ms. Darr went to her medical providers to obtain the appropriate certifications to take intermittent FMLA leave to attend medical appointments during the workday.

43. Ms. Darr was approved for FMLA leave in July of 2024.

44. On July 9, 2024 Ms. Darr took her first intermittent FMLA leave to attend a physical therapy appointment.

45. The next day, on July 10, 2024, Ms. Darr was put on administrative leave. Ms. Darr was advised that she was being investigated for being late to work on July 5, 2024, because she did not follow policy regarding her procurement card, and again for alleged misuse of her PSD vehicles.

46. Ms. Darr provided evidence that she always followed policy regarding the use of her procurement card, that she had a legitimate reason for where her PSD vehicle was at all times during work hours, and she took responsibility for being late on July 5, 2024, because her dog was suffering from health issues due to the July 4th holiday.

47. On October 9, 2024, Ms. Darr was advised she was being terminated from PSD.

## **COUNT I: TITLE VII DISCRIMINATION GENDER AND SEXUAL ORIENTATION**

48. Ms. Darr incorporates herein paragraphs 1-47 above, as if fully set forth herein.

49. Ms. Darr is protected under Title VII because of her gender and sexual orientation.

50. During Ms. Darr's employment with PSD, PSD engaged in unlawful discriminatory employment practices against her with respect to the terms and conditions of her employment based on her gender and sexual orientation.

51. The unlawful employment practices include, without limitation, disparate treatment in working conditions, supervision, investigative practices, discipline, and termination.

52. The effect of these practices deprived Ms. Darr of equal employment opportunities and otherwise adversely affected her employment status because of gender and sexual orientation.

53. These unlawful employment practices were intentional.

54. As a direct and proximate result of PSD's actions, Ms. Darr has suffered damages, including lost wage and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT II: TITLE VII RETALIATION

55. Ms. Darr incorporates herein paragraphs 1-47 above, as if fully set forth herein.

56. Ms. Darr had a good faith belief that PSD was engaged in discriminatory and retaliatory conduct in violation of § Title VII.

57. Ms. Darr engaged in protected opposition to PSD's unlawful employment practices by complaining about discrimination against her to Ms. Trimbath.

58. In retaliation for Ms. Darr's opposition to what she reasonably believed to be PSD's unlawful discrimination and retaliation against her, PSD engaged in unlawful retaliatory employment practices.

59. The unlawful employment practices include, without limitation, administrative leave, unwarranted administrative investigation, discipline, and discharge because of Ms. Darr's engagement in protected activity.

60. These unlawful employment practices were intentional.

61. As a direct and proximate result of PSD's actions, Ms. Darr has suffered damages, including lost wage and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**COUNT II: FMLA RETALIATION**

62. Ms. Darr incorporates all allegations in paragraphs 1-47 of this Complaint into this Second Claim for Relief.

63. Ms. Darr engaged in protected activity when she requested FMLA leave sometime in July of 2024 to care for her serious medical conditions, and then attended a medical appointment on July 9, 2024.

64. The day after Ms. Darr went on FMLA leave she was put on administrative leave and subsequently terminated.

65. Ms. Darr's termination was causally related and motivated by her request for FMLA leave because of Mr. Gossman's previous negative comments about Ms. Darr taking medical leave, as well as the temporal proximity between her protected leave and being put on administrative leave.

66. As a direct and proximate result of PSD's actions, Ms. Darr has suffered damages, including lost wage and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

67. The actions PSD, through its' employees, were in bad faith or willfully violated the law and so Ms. Darr is entitled to liquidated damages.

## PRAYER FOR RELIEF

For the reasons set forth above, judgment should be entered for Ms. Darr and against the PSD, and Ms. Darr should be awarded:

1. That this Court assume jurisdiction;

2. That this Court enter judgment in Plaintiff's favor and against Defendant;

4. That this Court declare the actions of the Defendant described in this Complaint and Jury Demand to be in violation of Title VII of the Civil Rights Act of 1964 and the Family and Medical Leave Act;

5. That this Court award Plaintiff all appropriate relief at law and equity, including but not limited to back pay and benefits with pre-judgment interest, front pay, a gross-up adjustment for taxes and any subrogation interests and all other make whole relief, including all available consequential/compensatory damages;

6. That this Court grant compensatory and consequential damages against the Defendant, including but not limited to damages for emotional distress, humiliation, loss of income and enjoyment of life, and other pain and suffering on all claims by law in the amount to be determined at trial against the Defendant, as allowed by law;

7. That this Court award Plaintiff her attorney fees and costs of this action, including expert witness fees, on all claims allowed by law;

8. That this Court award pre-judgment and post-judgment interest at the highest lawful rate; and

9. That this Court award such additional or alternative relief as may be just, proper and equitable.

**JURY TRIAL DEMAND**

Ms. Darr requests a trial by jury on all issues so triable.

Respectfully submitted on this 12th day of June, 2026.

*/s/Christopher Van Hall*
Christopher Van Hall, Bar # 50660
Van Hall Employment Law
242 Linden St, Fort Collins, CO, 80514
Telephone: (970) 235-0198

cvanhall@vhemploymentlaw.com
**Attorney for Plaintiff Leah Darr**